**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

PETRINA N. HARRISON,                                            **Docket No.:** 22cv7574

        Plaintiff

v.                                                                                      **COMPLAINT**

SELIP & STYLIANOU, LLP
f/k/a COHEN & SLAMOWITZ, LLP;
RUBIN & ROTHMAN, LLC;
PROGRESSIVE PROCESS SERVICE INC.
d/b/a PROGRESSIVE LEGAL SUPPORT INC.;
and JAZMIN PATINO,

        Defendants.
_____/

Plaintiff, Petrina N. Harrison ("Plaintiff"), by and through her attorney, Subhan Tariq, Esq., as and for her Complaint against Defendants, Selip & Stylianou, LLP f/k/a Cohen & Slamowitz, LLP ("Selip"), Rubin & Rothman, LLC ("Rubin"), Progressive Process Service Inc. d/b/a Progressive Legal Support Inc. ("Progressive"), and Jazmin Patino ("Ms. Patino") (hereinafter referred to as "Defendants"), respectfully sets forth, complains and alleges, upon information and belief, the following:

## INTRODUCTION

1.      Congress enacted the Fair Debt Collection Practices Act (the "FDCPA") in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. §1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." *Id.* Congress concluded that "existing laws...[we]re inadequate to protect consumers," and that "'the effective collection of

1

debts' does not require 'misrepresentation or other abusive debt collection practices.'" 15 U.S.C. §§ 1692(b) & (c).

2.      Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." Id. § 1692(e). "After determining that the existing consumer protection laws ·were inadequate." Id. § l692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. Id. § 1692k.

## NATURE OF THE ACTION

3.      Plaintiff brings this action under § 1692 et seq. of Title 15 of the United States Code, commonly referred to as the Fair Debt Collections Practices Act ("FDCPA").

4.      The present action arises out of the unfair and deceptive actions taken by Defendants in four previous actions against Plaintiff. The previous actions resulted in wrongfully obtained default judgments against Plaintiff.

5.      The default judgments issued in the underlying matters appears to have been a result of Defendants' use of "sewer service." This term has come to be used to refer to debt collectors intentionally failing to properly serve process on debtors, allowing them to obtain default judgments when those debtors do not respond to suits.

6.      Plaintiff is seeking damages, declaratory and injunctive relief, and attorney's fees.

## PARTIES

7.      Plaintiff Petrina N. Harrison is a resident of the State of New York.

8.      Plaintiff is a "consumer" as defined by the FDCPA, 15 USC § 1692a(3).

9.      Defendant Selip is a law firm engaged in the business of collecting debts with a principal place of business located at 199 Crossways Park Drive, Woodbury, NY 11897.

10.     Defendant Rubin is a law firm engaged in the business of collecting debts with a principal place of business located at 1787 Veterans Highway, Suite 32, Islandia, NY 11749.

11.     Defendant Progressive is a corporation engaged in the business of providing service of process with a principal place of business located at 99 W Hawthorne Ave, Suite 418, Valley Stream, NY 11580.

12.     Defendants Selip, Rubin, and Progressive are all a "debt collector" as defined and used in the FDCPA under 15 USC § 1692a(6).

13.     Defendant Progressive is a debt collector in relation to collection activities that are not directly related to service of process, which include but are not limited to, acting as an agent for collection attorneys by filing collection lawsuits on the attorney's behalf and regarding the writing and production of the affidavit of service.

14.     Defendant Ms. Patino is a process server employed by Defendant Progressive.

## FACTUAL ALLEGATIONS

15.     Plaintiff repeats, reiterates and incorporates the allegations contained in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

### *SELIP DEBTS*

16.     Selip alleges Plaintiff owes debts associated with Plaintiff's Department Stores National Bank/Macy's, Synchrony Bank/American Eagle, and Synchrony/PayPal accounts (together hereinafter referred to as "the Selip Debts").

17.    The Selip Debts were primarily for personal purposes and are therefore a "debt" as defined by 15 U.S.C. § 1692a(5).

18.    Sometime after the incurrence of the Selip Debts, Plaintiff fell behind on payments owed.

19.    Thereafter, at an exact time known only to Selip, the Selip Debts were assigned to Selip for collection.

### *Selip's Collection Lawsuits*

20.    On or about July 23, 2021, Selip commenced a lawsuit captioned *Department Stores National Bank v. Petrina N Harrison*, bearing the Index Number CV-011179-21/NA (hereinafter the "DSNB Lawsuit"), filed in the District Court of the County of Nassau – First District: Hempstead. *See* **Exhibit A**.

21.    On or about June 25, 2021, Selip also commenced a lawsuit captioned *Synchrony Bank v. Peetrina Harrison*, bearing the Index Number CV-009740-21/NA (hereinafter the "American Eagle Lawsuit"), filed in the District Court of the County of Nassau – First District: Hempstead. *See* **Exhibit B**.

22.    On or about July 9, 2021, Selip also commenced a lawsuit captioned *Synchrony Bank v. Petrina Harrison*, bearing the Index Number CV-010389-21/NA (hereinafter the "PayPal Lawsuit"), filed in the District Court of the County of Nassau – First District: Hempstead. *See* **Exhibit C**.

23.    Plaintiff was never served with the DSNB, American Eagle, and PayPal Lawsuits.

24.    However, on or around September 3, 2021, Selip filed a fraudulent affidavit of service with the Court in the DSNB Lawsuit. *See* **Exhibit D**.

25.    And on or around July 16, 2021, Selip also filed a fraudulent affidavit of service with the Court in the American Eagle Lawsuit. *See* **Exhibit E**.

26.    Furthermore, on or around July 23, 2021, Selip also filed a fraudulent affidavit of service with the Court in the PayPal Lawsuit. *See* **Exhibit F**.

27.    The fraudulent affidavits of service, filed in the DSNB, American Eagle, and PayPal Lawsuits, were written and attested to by Progressive and Ms. Patino. *See* **Exhibits D-F**.

28.    Within the fraudulent affidavit of service filed in the DSNB Lawsuit, Progressive and Ms. Patino attested that service was effectuated on 1) August 31, 2021, by affixing a copy of the DSNB Lawsuit to Plaintiff's door and on 2) September 2, 2021, by mailing a copy of the DSNB Lawsuit to Plaintiff. *See* **Exhibit D**.

29.    As aforementioned, Plaintiff was never served, by any means, with the DSNB Lawsuit – contrary to the fraudulent affidavit of service filed in the DSNB Lawsuit.

30.    Within the fraudulent affidavit of service filed in the American Eagle Lawsuit, Progressive and Ms. Patino attested that 1) substitute service was effectuated on July 14, 2021, at 6:25 PM, upon "JANE DOE": a black/gray-haired white female, approximately 65 plus years of age, 5'4"-5'8" tall and weighing 121-140 lbs." and "CO-TENANT" of Plaintiff, and on 2) July 15, 2021, by mailing a copy of the American Eagle Lawsuit to Plaintiff. *See* **Exhibit E**.

31.    As aforementioned, Plaintiff was never served, by any means, with the American Eagle Lawsuit – contrary to the fraudulent affidavit of service filed in the American Eagle Lawsuit.

32.    Furthermore, within the fraudulent affidavit of service filed in the PayPal Lawsuit, Progressive and Ms. Patino attested that substitute service was effectuated on July 21, 2021, at 7:13 PM, upon "JANE DOE": a black-haired black female, approximately 45-55 years of age, 5'4"-5'8" tall and weighing 141-160 lbs." and "CO-TENANT" of Plaintiff, on 2) July 22, 2021, by mailing a copy of the PayPal Lawsuit to Plaintiff. *See* **Exhibit F**.

33. As aforementioned, Plaintiff was never served, by any means, with the PayPal Lawsuit – contrary to the fraudulent affidavit of service filed in the PayPal Lawsuit.

34. Plaintiff is a 48-year-old black female that is 5'3" tall and weighs 225 lbs.

35. There is no person in Plaintiff's household that even comes close to matching the description in the fraudulent affidavit of service, filed in the American Eagle Lawsuit.

36. There is no person in Plaintiff's household that even comes close to matching the description in the fraudulent affidavit of service, filed in the PayPal Lawsuit.

37. Neither Plaintiff nor Plaintiff's husband resembled a 65-year-old white female, that weighs 121-140 lbs., in 2021 or resemble one in 2022

38. Neither Plaintiff nor Plaintiff's husband resembled a female, that weighs 141-160 lbs., in 2021 or resemble one in 2022.

39. These inaccurate and deceptive statements are a clear example of a pattern of "sewer service," in an attempt to quickly obtain default judgments.

40. Selip knew or should have known that the fraudulent affidavits of service were false and still used them in the furtherance of proceeding with the DSNB, American Eagle, and PayPal Lawsuits.

41. Selip knowingly used the fraudulent affidavits of service in the furtherance of proceeding with the DSNB, American Eagle, and PayPal Lawsuits.

42. Accordingly, Plaintiff never received notice that the DSNB, American Eagle, and PayPal Lawsuits were filed against her and was robbed of the opportunity to properly defend herself against the allegations contained in the DSNB, American Eagle, and PayPal Lawsuits.

43. As a result of the fraudulent affidavits of service, Selip was able to wrongfully obtain three default judgments against Plaintiff.

44.     On August 1, 2022, a wrongfully obtained default judgment, in the amount of $8,824.62, was entered against Plaintiff in the DNSB Lawsuit. *See* **Exhibit G**.

45.     On January 3, 2022, a wrongfully obtained default judgment, in the amount of $2,648.74, was entered against Plaintiff in the American Eagle Lawsuit. *See* **Exhibit H**.

46.     On September 30, 2022, the PayPal Lawsuit was dismissed pursuant to Civil Practice Law & Rules § 3215, as Plaintiff failed to appear due to Selip's sewer service. *See* **Exhibit C**. Therefore, upon information and belief, a wrongfully obtained default judgment, in the amount of $3,250.36, is believed to have been entered against Plaintiff in the PayPal Lawsuit.

47.     Plaintiff sustained an injury in that she now has to defend the DSNB, American Eagle, and PayPal Lawsuits that she did not receive proper service on, and these cases will appear in the public record.

### *Plaintiff's discovery of the default judgments in the DSNB, American Eagle, and PayPal Lawsuits*

48.     Plaintiff received a debt collection letter, dated August 11, 2022, from Selip, informing her of the wrongful default judgment entered against her in the DSNB Lawsuit – this was the first time that she became aware of the DSNB Lawsuit and wrongfully obtained default judgment against her. *See* **Exhibit I**.

49.     Plaintiff was stunned to read "[t]he court granted judgment on behalf of the creditor and against you on August 1, 2022 in the amount of $8,824.62." *Id*.

50.     As a result, Plaintiff made a trip to the District Court of the County of Nassau – First District: Hempstead and obtained a copy of the fraudulent affidavit of service filed in the DSNB Lawsuit.

51.     On or around September 8, 2022, Plaintiff proceeded to file an Order to Show Cause, in the DSNB Lawsuit, to vacate the wrongfully obtained default judgment against her. *See* **Exhibit J**.

52.     After filing the Order to Show Cause in the DSNB Lawsuit, Plaintiff also found out that Selip had filed two additional lawsuits against her: the American Eagle and PayPal Lawsuits. This was the first time that she became aware of the American Eagle and PayPal Lawsuits.

53.     Plaintiff's Order to Show Cause, in the DSNB Lawsuit, is currently pending in the District Court of the County of Nassau – First District: Hempstead.

54.     Notably, under CPLR § 317,

> A person served with a summons other than by personal delivery to him or to his agent for service designated under rule 318, within or without the state, who does not appear may be allowed to defend the action within one year after he obtains knowledge of entry of the judgment, but in no event more than five years after such entry, upon a finding of the court that he did not personally receive notice of the summons in time to defend and has a meritorious defense. If the defense is successful, the court may direct and enforce restitution in the same manner and subject to the same conditions as where a judgment is reversed or modified on appeal. This section does not apply to an action for divorce, annulment or partition.

55.     Additionally, under CPLR § 5015(a)(3), "[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just . . . upon the ground of . . . fraud, misrepresentation, or other misconduct of an adverse party."

### *Selip's History of Sewer Service*

56.     Notably, in 2009, "Attorney General Andrew M. Cuomo . . . announced his office has sued 35 law firms and two debt collectors in New York State in order to throw out an estimated 100,000 default judgments improperly obtained against New York consumers." *See* **Exhibit K**.

57.     "The law firms and debt collectors named in today's suit are . . . Cohen & Slamowitz, LLP." *Id*.

58.     Upon information and belief, Cohen & Slamowitz, LLP merged with another debt collection law firm and became Selip. *See* **Exhibit L**.

59.     Not surprisingly, Selip's unfair and deceptive practices, carried out in the DSNB, American Eagle and PayPal Lawsuits, are a continuation of Cohen & Slamowitz, LLP's tradition of sewer service.

### *RUBIN DEBT*

60.     Rubin alleges Plaintiff owes a debt associated with Plaintiff's Capital One Bank (USA), N.A. account (hereinafter referred to as "the Rubin Debt").

61.     The Rubin Debt was primarily for personal purposes and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5).

62.     Sometime after the incurrence of the Rubin Debt, Plaintiff fell behind on payments owed. Thereafter, at an exact time known only to Rubin, the Rubin Debt was assigned to Rubin for collection.

### *Rubin's Collection Lawsuit*

63.     On or about August 20, 2021, Rubin commenced a lawsuit captioned *Capital One Bank (USA), N.A. v. Petrina N Harrison*, bearing the Index Number CV-012168-21/NA (hereinafter the "Capital One Lawsuit"), filed in the District Court of the County of Nassau – First District: Hempstead. *See* **Exhibit M**.

64.     Plaintiff was never served with the Capital One Lawsuit.

65.     However, on or around September 24, 2021, Rubin filed a fraudulent affidavit of service with the Court in the Capital One Lawsuit. *See* **Exhibit N**.

66.     The fraudulent affidavit of service, filed in the Capital One Lawsuit, was written and attested to by Progressive and Ms. Patino. *Id*.

67.     Within the fraudulent affidavit of service filed in the Capital One Lawsuit, Progressive and Ms. Patino attested that service was effectuated on 1) August 21, 2021, by affixing a copy of the Capital One Lawsuit to Plaintiff's door and on 2) September 23, 2021, by mailing a copy of the Capital One Lawsuit to Plaintiff. *Id*.

68.     As aforementioned, Plaintiff was never served, by any means, with the Capital One Lawsuit – contrary to the fraudulent affidavit of service filed in the Capital One Lawsuit.

69.     These inaccurate and deceptive statements are a clear example of a pattern of "sewer service," in an attempt to quickly obtain default judgments.

70.     Rubin knew or should have known that the fraudulent affidavit of service was false and still used it in the furtherance of proceeding with the Capital One Lawsuit.

71.     Rubin knowingly used the fraudulent affidavit of service in the furtherance of proceeding with the Capital One Lawsuit.

72.     Accordingly, Plaintiff never received notice that the Capital One Lawsuit was filed against her and was robbed of the opportunity to properly defend herself against the allegations contained in the Capital One Lawsuit.

73.     As a result of the fraudulent affidavits of service, Rubin was able to wrongfully obtain a default judgment against Plaintiff.

74.     On October 28, 2021, a wrongfully obtained default judgment, in the amount of $14,853.87, was entered against Plaintiff in the Capital One Lawsuit. *See* **Exhibit O**.

75.     Plaintiff sustained an injury in that she now has to defend the Capital One Lawsuit that she did not receive proper service on, and this case will appear in the public record.

### *Plaintiff's discovery of the default judgment in the Capital One Lawsuit*

76.     Plaintiff received a debt collection letter, dated August 10, 2022, from Rubin, informing her of the wrongful default judgment entered against her in the Capital One Lawsuit – this was the first time that she became aware of the Capital One Lawsuit and wrongfully obtained default judgment against her. *See* **Exhibit P**.

77.     Plaintiff was stunned to read "[p]lease be advised that the above creditor recently obtained the annexed judgment against you." *Id*.

78.     As a result, Plaintiff made a trip to the District Court of the County of Nassau – First District: Hempstead and obtained a copy of the fraudulent affidavit of service filed in the Capital One Lawsuit.

79.     On or around September 8, 2022, Plaintiff proceeded to file an Order to Show Cause, in the Capital One Lawsuit, to vacate the wrongfully obtained default judgment against her. *See* **Exhibit Q**.

80.     Plaintiff's Order to Show Cause, in the Capital One Lawsuit, is currently pending in the District Court of the County of Nassau – First District: Hempstead.

81.     Notably, under CPLR § 317,

> A person served with a summons other than by personal delivery to him or to his agent for service designated under rule 318, within or without the state, who does not appear may be allowed to defend the action within one year after he obtains knowledge of entry of the judgment, but in no event more than five years after such entry, upon a finding of the court that he did not personally receive notice of the summons in time to defend and has a meritorious defense. If the defense is successful, the court may direct and enforce restitution in the same manner and subject to the same conditions as where a judgment is reversed or modified on appeal. This section does not apply to an action for divorce, annulment or partition.

82.     Additionally, under CPLR § 5015(a)(3), "[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just . . . upon the ground of . . . fraud, misrepresentation, or other misconduct of an adverse party."

83.     Plaintiff brings this present action as a result of the unfair and deceptive practices carried out by Defendants in the DSNB, American Eagle, PayPal, and Capital One Lawsuits. As a result of Defendants' actions, Plaintiff has suffered actual damages in her attempt to resolve the matter regarding the wrongfully obtained default judgments against her.

### *Recent lawsuits against Selip and Progressive*

84.     Selip and Progressive are also named as defendants in a matter that was litigated in the Eastern District of New York, *Ezra Hecht v. Selip & Stylianou, LLP, et al.* (1:19-cv-04069-EK-PK) (the "Hecht matter"). *See* **Exhibit R**.

85.     The Hecht matter contains similar allegations, as exhibited in the DSNB, American Eagle, and PayPal Lawsuits, of Selip engaging in sewer service. *Id.*

86.     The Hecht matter contains similar allegations, as exhibited in the DSNB, American Eagle, PayPal, and Capital One Lawsuits, of Progressive fabricating fraudulent affidavits of service. *Id.*

87.     Furthermore, Progressive is also named as a defendant in a matter that was litigated in the Southern District of New York, *Dewick, Ephraim v. Forster & Garbus, LLP, et al.* (7:19-cv-05514) (the "Dewick matter"). *See* **Exhibit S**.

88.     The Dewick matter contains similar allegations, as exhibited in the DSNB, American Eagle, PayPal, and Capital One Lawsuits, of Progressive fabricating fraudulent affidavits of service. *Id.*

## **FIRST CAUSE OF ACTION**

**Use of False, Deceptive, and Misleading Representations**
**15 U.S.C. § 1692e *et seq.***

*(Against Selip)*

89.     Plaintiff repeats, reiterates and incorporates the allegations contained in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

90.     Selip's debt collection efforts attempted and/or directed towards Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e.

91.     Pursuant to 15 U.S.C. § 1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

92.     Selip violated said section

   a.   by failing to serve Plaintiff with the DSNB, American Eagle, and PayPal Lawsuits, in violation of § 1692e(10);

   b.   by using fraudulent affidavits of service to wrongfully obtain default judgments, in the DSNB, American Eagle, and PayPal Lawsuits, against Plaintiff, in violation of § 1692e(10);

   c.   by falsely representing the character, amount or legal status of the Selip Debts in violation of § 1692e(2)(A);

   d.   by reason thereof, Selip is liable to Plaintiff for judgment that Selip's conduct violated § 1692e *et seq.* of the FDCPA, actual damages, statutory damages, costs, and attorney's fees.

93.     Furthermore, courts within the Second Circuit have found that violations of the FDCPA occur when defendants have engaged in the practice of sewer service. *See Polanco*, 930 F. Supp. 2d 547 (S.D.N.Y. 2015).

94.     In *Polanco*, the court denied defendant's motion for summary judgment finding that a question of fact existed regarding whether it had engaged in sewer service in order to obtain a default judgment against plaintiff. *Id*. at 552. The facts here are nearly identical, as Selip carried out sewer service in order to wrongfully obtain judgments against Plaintiff.

95.     The actions taken here by Selip in wrongfully obtaining default judgments without properly serving process on Plaintiff go against fundamental notions of fairness and due process.

96.     The wrongful actions taken by Selip in the DSNB, American Eagle, and PayPal Lawsuits are exactly what Congress attempted to protect consumers against in passing the FDCPA. Plaintiff is therefore entitled to relief as a result of Selip's blatant violations.

## SECOND CAUSE OF ACTION

**Use of False, Deceptive, and Misleading Representations**
**15 U.S.C. § 1692e *et seq.***

### *(Against Rubin)*

97.     Plaintiff repeats, reiterates and incorporates the allegations contained in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

98.     Rubin's debt collection efforts attempted and/or directed towards Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e.

99.     Pursuant to 15 U.S.C. § 1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

100.    Rubin violated said section

    a.  by failing to serve Plaintiff with the Capital One Lawsuit, in violation of § 1692e(10);

    b.  by using a fraudulent affidavit of service to wrongfully obtain a default judgment, in the Capital One Lawsuit, against Plaintiff, in violation of § 1692e(10);

    c.  by falsely representing the character, amount or legal status of the Rubin Debt in violation of § 1692e(2)(A);

    d.  by reason thereof, Rubin is liable to Plaintiff for judgment that Rubin's conduct violated § 1692e *et seq.* of the FDCPA, actual damages, statutory damages, costs, and attorney's fees.

101.    Furthermore, courts within the Second Circuit have found that violations of the FDCPA occur when defendants have engaged in the practice of sewer service. *See Polanco*, 930 F. Supp. 2d 547 (S.D.N.Y. 2015).

102.    In *Polanco*, the court denied defendant's motion for summary judgment finding that a question of fact existed regarding whether it had engaged in sewer service in order to obtain a default judgment against plaintiff. *Id.* at 552. The facts here are nearly identical, as Rubin carried out sewer service in order to wrongfully obtain a judgment against Plaintiff.

103.    The actions taken here by Rubin in wrongfully obtaining a default judgment without properly serving process on Plaintiff go against fundamental notions of fairness and due process.

104.    The wrongful actions taken by Rubin in the Capital One Lawsuit are exactly what Congress attempted to protect consumers against in passing the FDCPA. Plaintiff is therefore entitled to relief as a result of Rubin's blatant violations.

## **THIRD CAUSE OF ACTION**

**Use of False, Deceptive, and Misleading Representations**
**15 U.S.C. § 1692e *et seq.***

***(Against Progressive and Ms. Patino)***

105.    Plaintiff repeats, reiterates and incorporates the allegations contained in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

106.    Progressive's and Ms. Patino's debt collection efforts attempted and/or directed towards Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e.

107.    Pursuant to 15 U.S.C. § 1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

108.    Progressive and Ms. Patino violated said section

    a.   by failing to serve Plaintiff with the DSNB, American Eagle, PayPal, and Capital One Lawsuits;

    b.   by fabricating fraudulent affidavits of service in violation of § 1692e(10);

    c.   by reason thereof, Progressive and Ms. Patino are liable to Plaintiff for judgment that Progressive's and Ms. Patino's conduct violated § 1692e et seq. of the FDCPA, actual damages, statutory damages, costs, and attorney's fees.

109.    Under § 1692a(6)(D), there is a process server exemption from liability under the FDCPA.

110.    However, "a process server who goes 'beyond being merely being a messenger . . . and engages in prohibited abusive or harassing activities to force an individual to repay a debt' cannot claim the exemption's protections." *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 423.

111.    "Because the FDCPA protects process servers only 'while' they serve process, the [process server] defendants' alleged failure to serve plaintiffs process and provision of perjured affidavits

of service remove them from the exemption. On these facts, their conduct would be actionable under the FDCPA." *Id*.

112.    The wrongful actions taken by Progressive and Ms. Patino in the DSNB, American Eagle, PayPal, and Capital One Lawsuits are exactly what Congress attempted to protect consumers against in passing the FDCPA. Plaintiff is therefore entitled to relief as a result of Progressive's and Ms. Patino's blatant violations.

## FOURTH CAUSE OF ACTION

### Use of Unfair or Unconscionable Means in Attempt to Collect A Debt
### 15 U.S.C. §1692f

### *(Against Selip)*

113.    Plaintiff repeats, reiterates and incorporates the allegations contained in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

114.    Selip's debt collection efforts attempted and/or directed towards Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692f.

115.    Pursuant to § 1692f, a debt collector may not use any unfair or unconscionable means to collect or attempt to collect any debt.

116.    Although Congress has not defined "unfair or unconscionable" actions within the statute, it has been interpreted based on its plain meaning by at least one New York court. *Sutton v. Fin. Recovery Servs.*, 121 F. Supp. 3d 309 (E.D.N.Y. 2015).

117.    Selip violated this section by failing to properly serve Plaintiff.

118.    Selip violated this section by using fraudulent affidavits of service to wrongfully obtain default judgments against Plaintiff.

119.    Selip is clearly guilty of violating the FDCPA and Plaintiff is therefore entitled to recover damages.

## FIFTH CAUSE OF ACTION

### Use of Unfair or Unconscionable Means in Attempt to Collect A Debt
### 15 U.S.C. §1692f

### *(Against Rubin)*

120.    Plaintiff repeats, reiterates and incorporates the allegations contained in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

121.    Rubin's debt collection efforts attempted and/or directed towards Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692f.

122.    Pursuant to § 1692f, a debt collector may not use any unfair or unconscionable means to collect or attempt to collect any debt.

123.    Although Congress has not defined "unfair or unconscionable" actions within the statute, it has been interpreted based on its plain meaning by at least one New York court. *Sutton v. Fin. Recovery Servs.*, 121 F. Supp. 3d 309 (E.D.N.Y. 2015).

124.    Rubin violated this section by failing to properly serve Plaintiff.

125.    Rubin violated this section by using a fraudulent affidavit of service to wrongfully obtain a default judgment against Plaintiff.

126.    Rubin is clearly guilty of violating the FDCPA and Plaintiff is therefore entitled to recover damages.

## SIXTH CAUSE OF ACTION

### Use of Unfair or Unconscionable Means in Attempt to Collect A Debt
### 15 U.S.C. §1692f

*(Against Progressive and Ms. Patino)*

127.    Plaintiff repeats, reiterates and incorporates the allegations contained in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

128.    Progressive's and Ms. Patino's debt collection efforts attempted and/or directed towards Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692f.

129.    Pursuant to § 1692f, a debt collector may not use any unfair or unconscionable means to collect or attempt to collect any debt.

130.    Although Congress has not defined "unfair or unconscionable" actions within the statute, it has been interpreted based on its plain meaning by at least one New York court. *Sutton v. Fin. Recovery Servs.*, 121 F. Supp. 3d 309 (E.D.N.Y. 2015).

131.    Progressive and Ms. Patino violated this section by failing to serve Plaintiff with the DSNB, American Eagle, PayPal, and Capital One Lawsuits.

132.    Progressive and Ms. Patino violated this section by fabricating fraudulent affidavits of service.

133.    Progressive and Ms. Patino are clearly guilty of violating the FDCPA and Plaintiff is therefore entitled to recover damages.

## SEVENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

#### *(Against Selip)*

134.   Plaintiff repeats, reiterates and incorporates the allegations contained in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

135.   As a result of Selip's unlawful actions and clear violations of the FDCPA, Plaintiff has suffered emotional distress.

136.   Selip failed to properly serve Plaintiff and used fraudulent affidavits of service to wrongfully obtain default judgments against Plaintiff.

137.   Traditionally, establish a successful claim of intentional infliction of emotional distress, a plaintiff must satisfy four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York* 78 F.3d 787 (2d Cir. 1996).

138.   Although there is a high bar set to show that a defendant's actions were extreme and outrageous, there have been cases where New York courts have granted relief for intentional infliction of emotional distress for less serious behavior than that which would be "utterly intolerable in a civilized society." For example, one claim which alleged that a woman's neighbor repeatedly made "hang-up" telephone calls to her home. *Flatley v. Hartman*, 138 A.D.2d 345, 346 (N.Y. App. Div. 1988).

139.   In *Flatley*, the court held that the conduct complained of was actionable, even if no physical contact had occurred. *Id*. Further, there were "questions of fact as to whether [the defendant's]

alleged conduct exceeded the bounds of decency and as to whether the plaintiff suffered genuine and severe distress as a result." *Id.* Similar questions of fact exist here.

140.   Additionally, the Second Circuit has recognized that damages for emotional distress can be granted in cases where defendants have violated the FDCPA. *See Teng v. Metropolitan Retail Recovery*, 851 F. Supp. 61, 69 (E.D.N.Y. 2000).

141.   The court in Teng held that "the wrong sought to be punished by [the FDCPA] is similar in nature to a tort cause of action based on outrageous and reckless conduct and is the type of wrong in which damages for emotional distress have traditionally been permitted." *Id*.

142.   Here, Selip's abuse of the judicial process entitles Plaintiff to collect damages for the stress she suffered. Selip purposely obtained default judgements without properly serving process and via the use of fraudulent affidavits of service.

143.   Plaintiff continues to suffer by being unable to vacate the default judgments against her. Selip's actions in violating the FDCPA are directly to blame for Plaintiff's ongoing hardship.

**EIGHTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

***(Against Rubin)***

144.   Plaintiff repeats, reiterates and incorporates the allegations contained in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

145.   As a result of Rubin's unlawful actions and clear violations of the FDCPA, Plaintiff has suffered emotional distress.

146.   Rubin failed to properly serve Plaintiff and used a fraudulent affidavit of service to wrongfully obtain a default judgment against Plaintiff.

147.    Traditionally, establish a successful claim of intentional infliction of emotional distress, a plaintiff must satisfy four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York* 78 F.3d 787 (2d Cir. 1996).

148.    Although there is a high bar set to show that a defendant's actions were extreme and outrageous, there have been cases where New York courts have granted relief for intentional infliction of emotional distress for less serious behavior than that which would be "utterly intolerable in a civilized society." For example, one claim which alleged that a woman's neighbor repeatedly made "hang-up" telephone calls to her home. *Flatley v. Hartman*, 138 A.D.2d 345, 346 (N.Y. App. Div. 1988).

149.    In *Flatley*, the court held that the conduct complained of was actionable, even if no physical contact had occurred. *Id*. Further, there were "questions of fact as to whether [the defendant's] alleged conduct exceeded the bounds of decency and as to whether the plaintiff suffered genuine and severe distress as a result." *Id.* Similar questions of fact exist here.

150.    Additionally, the Second Circuit has recognized that damages for emotional distress can be granted in cases where defendants have violated the FDCPA. *See Teng v. Metropolitan Retail Recovery*, 851 F. Supp. 61, 69 (E.D.N.Y. 2000).

151.    The court in Teng held that "the wrong sought to be punished by [the FDCPA] is similar in nature to a tort cause of action based on outrageous and reckless conduct and is the type of wrong in which damages for emotional distress have traditionally been permitted." *Id*.

152.    Here, Rubin's abuse of the judicial process entitles Plaintiff to collect damages for the stress she suffered. Rubin purposely obtained a default judgement without properly serving process and via the use of a fraudulent affidavit of service.

153.    Plaintiff continues to suffer by being unable to vacate the default judgment against her. Rubin's actions in violating the FDCPA are directly to blame for Plaintiff's ongoing hardship.

## NINTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### *(Against Progressive and Ms. Patino)*

154.    Plaintiff repeats, reiterates and incorporates the allegations contained in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

155.    As a result of Progressive's and Ms. Patino's unlawful actions and clear violations of the FDCPA, Plaintiff has suffered emotional distress.

156.    Progressive and Ms. Patino failed to serve Plaintiff and fabricated fraudulent affidavits of service.

157.    Traditionally, establish a successful claim of intentional infliction of emotional distress, a plaintiff must satisfy four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York* 78 F.3d 787 (2d Cir. 1996).

158.    Although there is a high bar set to show that a defendant's actions were extreme and outrageous, there have been cases where New York courts have granted relief for intentional infliction of emotional distress for less serious behavior than that which would be "utterly intolerable in a civilized society." For example, one claim which alleged that a woman's neighbor repeatedly made "hang-up" telephone calls to her home. *Flatley v. Hartman*, 138 A.D.2d 345, 346 (N.Y. App. Div. 1988).

159.    In *Flatley*, the court held that the conduct complained of was actionable, even if no physical contact had occurred. *Id*. Further, there were "questions of fact as to whether [the defendant's] alleged conduct exceeded the bounds of decency and as to whether the plaintiff suffered genuine and severe distress as a result." *Id*. Similar questions of fact exist here.

160.    Additionally, the Second Circuit has recognized that damages for emotional distress can be granted in cases where defendants have violated the FDCPA. *See Teng v. Metropolitan Retail Recovery*, 851 F. Supp. 61, 69 (E.D.N.Y. 2000).

161.    The court in Teng held that "the wrong sought to be punished by [the FDCPA] is similar in nature to a tort cause of action based on outrageous and reckless conduct and is the type of wrong in which damages for emotional distress have traditionally been permitted." *Id*.

162.    Here, Progressive and Ms. Patino purposely failed to serve Plaintiff and fabricated fraudulent affidavits of service, which resulted in default judgments being entered against Plaintiff.

163.    Plaintiff continues to suffer by being unable to vacate the default judgments against her. Progressive's and Ms. Patino's actions in violating the FDCPA are directly to blame for Plaintiff's ongoing hardship.

## **DEMAND FOR TRIAL BY JURY**

164.    Plaintiff hereby respectfully requests a trial by jury for all claims and issues in its Complaint to which it is or may be entitled to a jury trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment from Defendants as follows:

A.  For actual damages provided and pursuant to 15 U.S.C. § 1692(k)(a)(1);

B.  For statutory damages provided and pursuant to 15 U.S.C. § 1692k(a)(2)(A);

C.  For statutory damages provided and pursuant to 15 U.S.C. § 1692k(a)(2)(B);

D.  For attorneys' fees and costs provided and pursuant to 15 U.S.C. 1692k(a)(3);

E.  A declaration that Defendants' practices violated the FDCPA;

F.  Award injunctive relief ordering Selip to cease use of unfair and unconscionable means of collecting debt, including the use of "sewer service,"

G.  Award injunctive relief ordering Rubin to cease use of unfair and unconscionable means of collecting debt, including the use of "sewer service,"

H.  Award injunctive relief ordering Selip to vacate the default judgments, in the DSNB, American Eagle, and PayPal Lawsuits, against Plaintiff;

I.  Award injunctive relief ordering Rubin to vacate the default judgment, in the Capital One Lawsuit, against Plaintiff;

J.  Awarding Plaintiff damages for emotional distress suffered caused by Defendants' FDCPA violations; and

K.  For any such other and further relief, as well as further costs, expenses and disbursements of this action, as this Court may deem just and proper.


Dated: December 13, 2022


Respectfully submitted,


_____

Subhan Tariq, Esq.
Tariq Law PC
**Attorney for Plaintiff**
99 Park Avenue, Suite 1100
New York, NY 10016
Telephone: (718) 674-1245
Facsimile: (516) 453-0490
Email: subhan@tariqlaw.com